UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MERIDIAN JOINT SCHOOL DISTRICT NO. 2,<br><br>            Plaintiff-Petitioner,<br><br>   v.<br><br>D.A. and J.A., parents and legal guardians of M.A., a minor individual,<br><br>           Defendants-Respondents. | Case No. 1:11-cv-00320-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

This matter is before the Court on Defendants' Motion to Award Attorney Fees and Costs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. (Dkt. 64.) Plaintiff, the Meridian Joint School District No. 2 (the "School District"), initiated this administrative appeal after receiving an adverse decision from a special education hearing officer in a due process hearing under the IDEA. The Court recently entered a decision on that appeal, affirming the hearing officer's decision and ruling in favor of the defendants (D.A. and J.A., who are the parents of M.A., a child diagnosed with high functioning autism and the student at the center of the dispute in this case) ("M.A.'s Parents"). (Dkt. 63.)

**MEMORANDUM DECISION AND ORDER - 1**

Following the Court's Memorandum Decision and Order affirming the hearing officer's decision, M.A.'s Parents filed a motion for attorneys' fees. They are not, however, at this time seeking fees associated with the Court's decision.[1] Rather, M.A.'s Parents seek $184,592.01 in attorneys' fees and $570.20 in costs incurred during the administrative due process hearing. M.A.'s Parents claim that they are entitled to such fees and costs as prevailing parties under the fee-shifting provision contained in § 1415(i)(3)(B)(i)(I) of the IDEA.

In response to M.A.'s Parents' motion for attorneys' fees, the School District filed a motion to bifurcate the issues of "entitlement to fees" and the "reasonableness of the fees." (Dkt. 70.) In the motion, the School District argued that the plain language of the statute and the applicable case law dictate a finding that M.A.'s Parents are not entitled to attorneys' fees and that it makes more sense for the Court to address the issue of entitlement to fees before moving on to the issue of whether the fees requested are reasonable. The Court agreed and granted the motion to bifurcate. (Dkt. 74.)

The School District has filed its Memorandum in Opposition to M.A.'s Parents' motion for fees, (Dkt. 77), M.A.'s Parents filed their Reply in support of fees, (Dkt. 84) and the Court allowed the School District to file a sur-reply. (Dkt. 88.) The issue of whether M.A.'s Parents are entitled to attorneys' fees under the IDEA has been fully

---

[1] The School District has appealed the Court's Memorandum Decision and Order affirming the hearing officer's decision, and the appeal is currently pending before the United States Court of Appeals for the Ninth Circuit.

**MEMORANDUM DECISION AND ORDER - 2**

briefed and the parties presented oral arguments on the motion on June 13, 2013. For the

reasons set forth below, the Court finds that M.A.'s Parents are entitled to attorneys' fees

as prevailing parties under 20 U.S.C. § 1415(i)(3)(B)(i)(I).

## BACKGROUND[2]

At the time the School District filed its administrative appeal in this case, M.A.

was a minor diagnosed with Autism Spectrum Disorder entering his senior year as a

student at Centennial High School, which is within the Meridian Joint School District.[3]

In 2004, M.A. and his parents moved from California to Idaho and M.A. was

enrolled in the School District. Prior to moving to Idaho, M.A. received special education

under the IDEA and M.A.'s Parents provided the School District with information related

to M.A.'s previous diagnoses of expressive-receptive language disorder, central auditory

processing disorder, possibility of dyslexia and dysgraphia, and possibility of Asperger's

Syndrome. M.A. received special education while enrolled in the School District under

the IDEA from the 5th grade (2004-2005) to the 8th grade (2007-2008).

---

[2] The following facts and procedural history are taken largely from the Court's
Memorandum Decision and Order entered March 20, 2013. (Dkt. 63.)

[3] During the pendency of this administrative appeal, M.A. turned 18 years of age.
M.A. completed his senior year at Centennial High School and satisfied the requirements
for graduation. He has not, however, graduated. On Defendants' motion, the Court
enjoined the School District from graduating M.A. pending the resolution of the current
administrative appeal pursuant to 20 U.S.C. § 1415(j). (Dkt. 49.)

**MEMORANDUM DECISION AND ORDER - 3**

In April of 2008, following M.A.'s three-year reevaluation under the IDEA, M.A.'s Individualized Educational Program ("IEP") team met and determined that M.A. was no longer eligible to receive special education services under the IDEA.[4] In response, M.A.'s parents, at their own expense, obtained an evaluation by Dr. Leavell, who diagnosed M.A. with Asperger's Disorder. Dr. Leavell's report was provided to the School District and M.A.'s Parents requested that the School District conduct an evaluation of M.A. to reassess his eligibility for special education. The School District found that, rather than being in need of an IEP under the IDEA, M.A. would receive various accommodations at the start of his 9th grade year under Section 504 of the Rehabilitation Act.

In April of 2009, for reasons well known to the parties—the details of which need not be addressed in this decision—M.A. was arrested and placed in the Ada County Juvenile Detention Center. M.A.'s incarceration lasted from April 26, 2009, until September 17, 2010. During his incarceration, M.A.'s Parents requested that the School District evaluate M.A. for special education, but were informed that the responsibility for educating M.A. had shifted to the Boise School District ("BSD"), which is the school district where the detention facility is located. After negotiating with BSD over the need for an IEP, M.A.'s parents retained counsel and requested a due process hearing under the

---

[4] Under the IDEA, the term "individualized education program team" or "IEP Team" means a group of individuals composed of the parents of a child with a disability, a representative from the school district, and a number of educational and other professionals. 20 U.S.C. § 1414(d)(1)(B).

IDEA. The result was a stipulation that additional testing would be performed and M.A.'s

Parents withdrew their request for a due process hearing.

BSD issued an eligibility report dated February 18, 2010, finding that M.A. had

strong indications of Asperger's Syndrome, but that he was not eligible for special

education services, because "[a]t this time, there is no evidence of the adverse effect of

[his] disabilities on his current educational performance." (*BSD Eligibility Report*, Ex.

558 p. 28.) The eligibility report, however, also noted that BSD's evaluation of M.A. was

confined by the fact that the assessments were conducted while M.A. was incarcerated.[5]

Given the possible effect that the nature of the location may have had on BSD's

assessment of M.A., the eligibility report states that:

> In the event [M.A.] is released from the ACJDC, and placed
> at another facility, or returns home to the Meridian School
> District, [M.A's parents] may wish to request an evaluation to
> determine whether his disabilities adversely affect his
> educational performance, and whether he needs specially
> designed instruction in order to access and progress in the
> general education curriculum in the new location.

(Ex. 558 pp. 28-29.)

M.A. was released from the detention facility in September of 2010, and returned

to Centennial High School in the School District on September 24, 2010—approximately

five weeks after the start of the 2010-2011 school year. On September 20, 2010, three

---

[5] The eligibility report states: "Due to the nature of the ACJDC, the ability of
students to work at their own level and at their own speed, and the individualized support
provided to students through the flex curriculum, the difficulties that [M.A.'s mother]
asserts were present in the high school setting and other previous educational settings are
not currently observed at the ACJDC." (Ex. 558 p. 28.)

**MEMORANDUM DECISION AND ORDER - 5**

days before M.A.'s return to Centennial High School, M.A.'s Parents delivered a letter to the School District requesting "a comprehensive IEP evaluation." On September 23, 2010, the School District held a Section 504 team meeting to review M.A.'s Section 504 plan and a new Section 504 plan was drafted.

According to the School District, a pre-referral team meeting was held on September 27, 2010, to address M.A.'s Parents' request that M.A. be evaluated for special education services. BSD school personnel from the detention facility were in attendance and provided an overview of M.A.'s educational evaluation, program, and performance while he was incarcerated. The pre-referral team concluded that no additional formal evaluations needed to be completed because BSD completed a thorough assessment of M.A., but informal observations would occur and further data would be collected.

M.A.'s Parents were provided written notice dated September 27, 2010, denying their request for additional assessments. (Ex. 585.) The notice indicated that M.A. would not be receiving specially designed instruction. M.A.'s mother responded to the notice on October 4, 2010, indicating that she disagreed with the School District's determination and seeking a team meeting. The School District refused to convene a team meeting, stating that "a meeting has already been scheduled with the parents and appropriate Centennial High School Staff on October 25, 2010 . . .to discuss [M.A.'s] progress in the high school setting." (Ex. 590.) The School District reiterated its belief that the

**MEMORANDUM DECISION AND ORDER - 6**

assessment conducted by BSD while M.A. was incarcerated was comprehensive and that "there was no indication that [M.A.] had a need for specially designed instruction." (*Id.*)

Meetings with M.A.'s mother and school personnel took place on October 25, November 4, and November 16, 2010. During those meetings, school personnel—including M.A.'s teachers and the school psychologist—provided an overview of their observations of M.A. The consensus among school personnel at the meetings was that M.A. was doing well in the school setting, both academically and socially, and that there were no significant concerns.

Written notice was provided to M.A.'s Parents on November 22, 2010, stating that the School District was refusing to perform additional assessments of M.A and that "[M.A.] does not need specially designed instruction at this time and therefore does not qualify for an IEP." (Ex. 611.)

In a letter dated January 17, 2011, M.A.'s Parents disagreed with the School District's conclusion and requested an Independent Education Evaluation ("IEE"). (Ex. 654.) The reasons stated for the disagreement were that "the evaluations were conducted in an extremely structured and regimented environment, the evaluations are not comprehensive, and do not adequately assess [M.A.'s] unique needs." (*Id.*)

The School District denied the request for an IEE and filed for a due process hearing pursuant to 34 C.F.R. § 300.502(b)(2)(i), seeking confirmation from a hearing officer that the evaluation conducted by BSD, and adopted by the School District, was appropriate and that M.A. did not qualify for special education services.

**MEMORANDUM DECISION AND ORDER - 7**

The matter proceeded before Special Education Hearing Officer Guy Price ("HO Price") on March 21, 2011. The hearing itself lasted fifteen days between March 21, 2011 and April 29, 2011. Thirty-seven witnesses testified and one hundred and seventy exhibits were admitted during the hearing. HO Price entered a Memorandum Decision and Order dated June 6, 2011. (Dkt. 1-2.) The issues before HO Price were:

> (1) "Is the Student entitled to an Independent Educational Evaluation, as requested by his attorney on January 17, 2011"; and
>
> (2) "Does the Student qualify for special education pursuant to the eligibility criteria set forth in the IDEA and the Idaho Special Education Manual."

(*Pl.'s Compl.* at 2, Dkt. 1.)

In his June 6, 2011 decision, HO Price found that the School District failed to conduct an appropriate evaluation and that M.A. was entitled to an IEE at public expense. HO Price declined to rule on whether M.A. qualified for special education services, stating that such determination was premature until an appropriate evaluation was completed.

On July 15, 2011, the School District filed a complaint in this Court pursuant to 20 U.S.C. § 1415(i)(2)(A), seeking judicial review of the hearing officer's decision. On July 28, 2011, M.A.'s Parents filed their Answer and Counterclaim. (Dkt. 6.) The counterclaim seeks, among other things, "reasonable attorneys' fees and costs incurred in connection with the due process proceedings." (Dkt. 6 at 41.) The Court received the

**MEMORANDUM DECISION AND ORDER - 8**

records from the administrative proceedings and allowed the parties to submit additional

evidence in accordance with 20 U.S.C. § 1415(i)(2)(C). After reviewing the parties'

memoranda in support of their positions and hearing oral arguments on the matter, the

Court entered a Memorandum Decision and Order on March 20, 2013, affirming the

hearing officer's decision. (Dkt. 63.) On April 3, 2013, M.A.'s Parents filed their motion

for attorneys' fees associated with the due process hearing. (Dkt. 64.)

## DISCUSSION

The School District's opposition to M.A.'s Parents' motion for attorneys' fees

raises two issues: first, whether M.A.'s Parents are prevailing parties under the fee-

shifting provision contained in § 1415(i)(3)(B)(i)(I) of the IDEA; and second, if M.A.'s

Parents are prevailing parties under the statute, is their claim for attorneys' fees barred by

the statute of limitations applicable to such claims. Concerning the first issue, the Court

finds that, even though the hearing officer did not decide whether M.A. was eligible for

special educational services during the due process hearing, M.A.'s Parents prevailed on a

significant issue that materially altered the relationship between the parties, making

M.A.'s Parents prevailing parties entitled to attorneys' fees under § 1415(i)(3)(B)(i)(I).

As to the second issue, the Court finds that the 90-day limitation period applicable to

appeals from an adverse decision in a due process hearing under the IDEA does not apply

to claims for attorneys' fees under the statute and that the applicable limitations period is

three years under Idaho Code § 5-218 for actions on a liability created by statute. Because

M.A.'s Parents' claim for attorneys' fees was filed well within the applicable statute of

**MEMORANDUM DECISION AND ORDER - 9**

limitations, the Court finds their claim is not time barred.

**1.      Whether M.A.'s Parents are Prevailing Parties under § 1415(i)(3)(B)(i)(I)**

The IDEA is a civil rights statute and, like many other federal civil rights statutes,

it contains a fee shifting provision for an award of attorneys' fees to the prevailing party.

Specifically, 20 U.S.C. § 1415(i) provides:

> (3) Jurisdiction of district courts; attorneys' fees
>
> > (A) In general
> >
> > The district courts of the United States shall have jurisdiction of actions
> > brought under this section without regard to the amount in controversy.
> >
> > (B) *Award of attorneys' fees*
> >
> > > (i) In general
> > >
> > > *In any action or proceeding brought under this section, the court*, in
> > > its discretion, *may award reasonable attorneys' fees as part of the
> > > costs*–
> > >
> > > > (I) *to a prevailing party who is the parent of a child with a
> > > > disability*;

20 U.S.C. § 1415(i)(3)(B)(i)(I) (emphasis added). The attorneys' fee provision has been

held to apply both to administrative and judicial proceedings under the IDEA. *See P.N. v.

Seattle Sch. Dist.*, 474 F.3d 1165, 1169 (9th Cir. 2007) (Indicating that a parent is eligible

to recover attorneys' fees for prevailing in a due process hearing).

Notwithstanding the fact that M.A.'s Parents were successful in the administrative

proceedings, the School District argues that M.A.'s Parents are not "prevailing parties"

within the meaning of the above provision. The School District argues that the plain language of the provision requires that the prevailing parent be "the parent of a child with a disability," and that, although M.A. has been diagnosed with Autism and previously received special educational services from the School District under the IDEA, he is not a "child with a disability" within the meaning of the statute. In support of this argument, the School District directs the Court to the definition section of the IDEA, which defines "child with a disability" as a child who (i) has an impairment listed in the statute (which M.A., as a child with Autism, does in this case) and (ii) "by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A).

According to the School District, since neither the hearing officer nor this Court decided the issue of whether M.A. was eligible for special education services, M.A. is not a "child with a disability" within the meaning of the statute. Moreover, since M.A. is not a child with a disability, the School District asserts that his parents are not "the parent of a child with a disability" under the fee-shifting provision. Since M.A.'s Parents are not "the parent of a child with a disability," according to the School District, M.A.'s Parents cannot be prevailing parties under the plain language of the statute.

In support of their argument, the School District relies on the Fifth Circuit's decision in *T.B. v. Bryan independent School District*, 628 F.3d 240 (5th Cir. 2010), two unpublished decisions from the Third and Sixth Circuits cited within the Fifth Circuit's decision, and the United States Supreme Court's decision in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006).

**MEMORANDUM DECISION AND ORDER - 11**

The Fifth Circuit's decision in *T.B. v. Bryan Independent School District* is the only published Circuit opinion dealing with the issue before the Court. The decision is on point. It deals with the exact legal question before this Court and also is factually and procedurally similar to this case. Notwithstanding these similarities, for the reasons set forth below, the Court does not find the Fifth Circuit's reasoning persuasive and the Court will decline the School District's invitation to adopt the Fifth Circuit's interpretation of the fee-shifting provision in this case.

In the Fifth Circuit case, the student at issue was diagnosed with ADHD and referred for an evaluation. 628 F.3d at 242. It was determined that the student did not qualify for special education services, but the school district did provide accommodations under Section 504 of the Rehabilitation Act. *Id*. The student's parents consulted private education professionals, who concluded that the student was in fact qualified for special education. *Id*. The student's parents then filed for a due process hearing under the IDEA, alleging that the school failed to (1) assess appropriately whether [the student] was eligible for special education, (2) identify him as a student with a disability, (3) conduct a functional behavior assessment, (4) develop a behavior intervention plan, (5) develop an individualized education program , and (6) provide special-education services. *Id*.

The hearing officer ordered the school to conduct certain evaluations but did not decide the eligibility issue. On appeal, the district court held that the hearing officer properly refrained from deciding the eligibility issue, but that the student's parents had prevailed and were entitled to attorneys' fees. The school appealed the decision to the

**MEMORANDUM DECISION AND ORDER - 12**

Fifth Circuit.

The Fifth Circuit identified the issue as "[w]hether a parent of a child not yet determined to be a 'child with a disability' can recover attorneys' fees under the IDEA." *Id*. at 243. The court noted that the issue was one of first impression in the Fifth Circuit. Ultimately, the court held that the student's parents' arguments could not overcome the plain language of the statute and reversed the decision of the district court. According to the Fifth Circuit, because the IDEA only authorizes an award of attorneys' fees to parents of a "child with a disability" as that term is defined in the statute, and the student in that case had never been found to fall within that statutory definition, his parents could not be prevailing parties within the meaning of the statute.[6]

## A. Interpretation of the Statutory Language

The issue in this case is one of statutory interpretation—whether M.A.'s Parents are prevailing parties within the meaning of § 1415(i)(3)(B)(i)(I). For the reasons set forth below, the Court finds that they are prevailing parties.

The School District is correct that the starting point of any statutory analysis is the language of the statute itself. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1268 (9th Cir. 2009) ("The starting point for the interpretation of a statute is always its language.").

---

[6] The two unpublished decisions cited by the Fifth Circuit from the Third and Sixth Circuits do not add anything meaningful to the Fifth Circuit's analysis. Like the Fifth Circuit decision, those courts simply cited the rule requiring the court to give effect to the plain language of the statute and stopped their analysis there. *See Z.S. v. Neptune Township Board of Education*, 246 F. App'x 186 (3d Cir. 2008); *see also*, *Edwards v. Cleveland heights-University Heights Board of Education*, 951 F.2d 349 (6th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 13**

However, what the School District fails to realize is that the purpose of the "plain meaning rule" is to ascertain and effectuate the intention of the legislature. *See Utah Junk Co. v. Porter*, 328 U.S. 39, 44 (1946) ("All construction is the ascertainment of meaning . . . [a]nd literalness may strangle meaning."); *see also*, *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). Accordingly, although statutory interpretation begins with the language of the statute itself, the Court may look beyond the language of a statute if applying that language would produce an absurd result or a decision that would violate Congressional intent in enacting the statute. Indeed, the Ninth Circuit has held that the courts should not adopt a literal interpretation of a statute where such an interpretation would "thwart the purpose of the over-all statutory scheme[,]" *Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001) (citations and quotation marks omitted), or "contravene any clear legislative history[.]" *In re Catapult Entm't, Inc.*, 165 F.3d 747, 757 (9th Cir. 1999).

Beginning with the language of the statute, the Court finds that the fee-shifting provision is not as clear and unambiguous as the Fifth Circuit suggests. First, while the phrase "child with a disability" is specifically defined in the statute, the phrase "parent of a child with a disability" is not. This distinction is not insignificant: It is clear from the statutory usage of the phrase "parent of a child with a disability," that Congress did not intend for the technical definition of "child with a disability" (which carries certain substantive entitlements under the statute) to be imputed to the phrase "parent of a child

with a disability" (which carries certain procedural entitlements under the statute).[7]

One only need look to the second paragraph of § 1415 to see that Congress used the phrases "parent of a child with a disability," "parent," "child," and "parents of the child" all to similar effect in the statute. *See* 20 U.S.C. § 1415(b)(1) - (7). Moreover, the phrase "parent of a child with a disability" is used throughout the statute and it is clear that the phrase does not apply only in situations where the child has previously been determined eligible for special education services. For instance, § 1415(b) provides that "[t]he procedures required by this section shall include . . . [a]n opportunity for the parents of a child with a disability to . . . participate in meetings with respect to the identification, evaluation, and educational placement of the child, and . . . to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1). The above referenced procedures necessarily take place—under ordinary circumstances—*before* a child has been determined eligible for special educational services.

Viewing the statute as a whole, it is clear to the Court that Congress did not mean for the phrase "parent of a child with a disability" always to be constrained literally by the definition of "child with a disability" as that phrase is defined in the definition section of

---

[7] The Court characterizes the IDEA's definition of disability as technical because it departs from the ordinary definition of the word. In its ordinary usage, "disability" is defined as "an objectively measurable condition of impairment, physical or mental." Black's Law Dictionary 474 (7th ed. 1999). M.A. clearly satisfies this definition-- he has been diagnosed with a form of high functioning autism. The IDEA's definition of the term is technical in the sense that it requires something more than the ordinary definition; it requires that the student be found to "need[] special education and related services" in addition to being disabled in the ordinary sense. *See* 20 U.S.C. § 1401(3)(A).

**MEMORANDUM DECISION AND ORDER - 15**

the statute. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341-345 (1997) (noting that a

term that may "[a]t first blush" seem unambiguous can prove otherwise when examined

in the context of the statute as a whole.") To hold otherwise would give rise to anomalous

results and overtly frustrate the purpose of the statute. *See Adoptive Couple v. Baby Girl*,

570 U.S. __, *47, *62 (2013) (Sotomayor, J., dissenting) (disapproving of literal

interpretation of statute where such literalism distorts the statute and ignores Congress'

purpose in enacting the statute).

  The United States Court of Appeals for the Ninth Circuit adopted similar reasoning

in *Hacienda La Puente Unified School District of Los Angeles v. Honig*, 976 F.2d 487

(9th Cir. 1992). In that case, the parents of a child suspected to have a disability requested

a due process hearing under § 1415, contesting the school's previous determination that

the child was not eligible for special education. 976 F.2d at 489. The hearing officer

found in favor of the child and his parents, concluding that the child suffered from a

serious emotional disturbance and that the school district wrongly denied him the

protection afforded by the IDEA. *Id*. The school district appealed the hearing officer's

decision to the district court, which affirmed the hearing officer's decision and awarded

the parents attorneys' fees. *Id*. at 490. The school district then appealed the district court's

decision, arguing the hearing officer lacked jurisdiction because § 1415 expressly states

that only "children with disabilities" are entitled to due process hearings and the child in

that case had not been found disabled previously. *Id*. at 492.

**MEMORANDUM DECISION AND ORDER - 16**

The Ninth Circuit boiled down the school district's argument as follows: "The essence of [the school district's] argument is that, because the IDEA most often refers to 'children with disabilities' . . . it is necessary for a school district or similar agency to identify a child as 'disabled' or 'handicapped' before the procedural safeguards mandated by 20 U.S.C. § 1415 can be invoked." *Id*. The Ninth Circuit flatly rejected the school district's argument, stating that, "even though not previously identified as disabled, the student's alleged disability may be raised in an IDEA administrative due process hearing." *Id*. According to the Ninth Circuit, "[a] contrary result would frustrate the core purpose of the IDEA, which is to prevent schools from indiscriminately excluding disabled students from educational opportunities." *Id*.

Although the Ninth Circuit's interpretation of "child with a disability" under § 1415 in the above case was applied in a slightly different context, the Court finds the reasoning in that case to be consistent with a common sense reading of the statutory language and supported by the express purposes of the IDEA as identified by Congress. The outcome should be no different in this case.

The School District argues that M.A.'s Parents have placed too much significance on the Ninth Circuit's decision in *Honig* and directs the Court to the United States Supreme Court's decision in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006). In *Arlington*, the issue before the Supreme Court was "whether th[e] fee-shifting provision authorizes prevailing parents to recover fees for services rendered by experts in IDEA actions." 548 U.S. at 293-94. The Court held that it

**MEMORANDUM DECISION AND ORDER - 17**

did not. In reaching its decision, the Court began its analysis with an explanation of the Constitutional basis authorizing Congress's enactment of the IDEA. The Court explained that the IDEA is a Spending Clause statute and, as such, the statute must put the state on notice of the conditions—including liability for attorneys' fees—attached to the acceptance of federal funding. *Id.* at 295-96. Here, the School District relies heavily on the Supreme Court's discussion of the Spending Clause, arguing that, based on the plain language of the statute, the school was not on notice that it could be held liable for attorneys' fees under the circumstances of this case.

After discussing the Spending Clause, the Court moved on to the core of its statutory analysis, holding that the fee-shifting provision contained in § 1415 does not authorize reimbursement for expert expenses for two reasons. First, the Court pointed out that § 1415(i)(3)(B) authorizes "costs" to the prevailing party and that "costs" "is a term of art that generally does not include expert fees." *Id.* at 297 ("The use of this term of art, rather than a term such as 'expenses,' strongly suggests that § 1415(i)(3)(B) was not meant to be an open-ended provision that makes participating States liable for all expenses incurred by prevailing parents in connection with an IDEA case—for example, travel and lodging expenses or lost wages due to time taken off from work."). The Court then looked to the other provisions of the IDEA, all of which, the Court held, indicate that "costs" do not include expert fees. *Id.* at 298.

Applying the same analysis employed by the Supreme Court in *Arlington*, this Court's interpretation in this case is informed first by the fact that "prevailing party" is a

**MEMORANDUM DECISION AND ORDER - 18**

term of art. *See Astrue v. Ratliff*, 130 S. Ct. 2521, 2525 (2010) ("We have long held that the term 'prevailing party' in fee statutes is a 'term of art' that refers to the prevailing litigant."). As a term of art, "prevailing party" indicates an exception to the general rule that each party bear his or her own costs. It also requires a specific analysis, requiring the court to determine whether the party seeking fees succeeded on an issue that materially altered the relationship between the parties.  *See Weissburg v. Lancaster School District*, 591 F.3d 1255, 1258 (9th Cir. 2010). Moreover, as discussed more fully below, the legislative history indicates that, when Congress included the fee-shifting provision in the IDEA, it intended the provision to operate in the same way as the numerous other fee shifting statutes that provide for the award of attorneys' fees to parties who prevail in court to obtain what is guaranteed to them by law.

Moving to the second part of the Supreme Court's analysis in *Arlington*, which looked to the other provisions of the IDEA to ensure that its interpretation of "costs" was consistent with the statute as a whole, in this case the Court has already explained that the statutory language (when viewed as a whole) does not support the School District's interpretation of "prevailing party." When one looks at the way in which Congress used the phrase "parent of a child with a disability" throughout the statute, it is clear that the rights afforded to a "parent of a child with a disability" are not dependent upon a prior finding that the child at issue is a "child with a disability" as that phrase is defined in the statute. *See Honig*, 976 F.2d at 492; *see also*, *Robinson*, 519 U.S. at 341-345.

**MEMORANDUM DECISION AND ORDER - 19**

In sum, the Supreme Court's decision in *Arlington* does not support the School District's interpretation of the statute in this case. The fact that the IDEA is a Spending Clause statute does not alter the Court's analysis. Indeed, the Court finds it troubling that the School District even attempts to argue that it was not put on notice by the statute that, when it initiated a due process hearing (which it lost), appealed the hearing officer's decision to this Court (which it lost), appealed this Court's decision to the Ninth Circuit (which is currently pending), and otherwise held M.A. and his Parents hostage in administrative proceedings and litigation for the past three years, the School District would not be on the hook for attorneys' fees if M.A. and his Parents prevailed.

Given that § 1415(i)(3)(B)(i)(I) is subject to differing interpretations, the next step in the analysis is to determine whether the School District's interpretation is consistent with the legislative history and Congressional intent. On this issue, there is no question that the School District's interpretation is not in accord with Congress's intent in enacting the statute in general or the fee-shifting provision in particular.

In passing the IDEA, Congress's goal was that "all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C § 1400(c). Congress found that such a statute was needed because, prior to the enactment of the Education for All Handicapped Children Act of 1975 (the predecessor to the IDEA), "the educational needs of millions of children with disabilities were not being fully met because" children with disabilities were not being properly identified, schools were not

**MEMORANDUM DECISION AND ORDER - 20**

affording disabled students special education services or excluding disabled students altogether, and because there was a lack of adequate resources within the public school system. *Id*. In an effort to ameliorate the above identified problems and effectuate the goals of the statute, the IDEA contains several provisions for the identification and evaluation of children suspected of having a disability. Those provisions were at play in this case and they apply to parents and students prior to an official recognition that a child is entitled to special education services. For instance, if a parent of a child suspected to have autism takes her child to a specialist who diagnoses the child with autism, it is absurd to think that the parent is not entitled to invoke the provisions of the IDEA requiring schools to evaluate the child at the parents' request simply because the provision refers to a "parent of a child with a disability" and the statute defines "child with a disability" as a child who has been previously found to be in need of special educational services. This is what the Ninth Circuit held in *Honig*. 976 F.2d at 492.

The Court's analysis also is informed by the legislative history related to Congress's enactment of the fee shifting provision. Senator Weicker, chairman of the Senate Conference Committee on the predecessor statute to the IDEA, said:

> What we do here today is to make the Education of Handicapped Act consistent with more than 130 other fee shifting statutes which provide for the award of attorney's fees to parties who prevail in court to obtain what is guaranteed to them by law. Without this remedy, many of our civil rights would be hollow pronouncements available only to those who could afford to sue for enforcement of their rights."

**MEMORANDUM DECISION AND ORDER - 21**

132 Cong. Rec. S. 9277 (July 17, 1986). The legislative history also indicates that it was Congress's intent that "prevailing party" under the IDEA be interpreted in a manner "consistent with the United States Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983)." S. Rep. No. 112, 99th Cong., 2d Sess. 13-14.

Significantly, Congress sought to *encourage, assist, and make whole* "those [parents] and attorneys who worked to vindicate the rights of handicapped children under the [statute]." *See Counsel v. Dow*, 849 F.2d 731, 739 (2d Cir. 1988). In contrast, the School District's interpretation would discourage parents from invoking their rights under the IDEA and create an incentive for schools to take an adversarial position early in the identification and evaluation process without fear of being liable for attorneys' fees. Such policy considerations weigh against adopting the School District's interpretation.

In this case, the School District's interpretation of the fee shifting provision is out of line with Congress's intent. A short recitation of the facts from this case is illustrative. Prior to 2004, M.A. received special education services under the IDEA during elementary school in California. When his Parents moved to Idaho and M.A. was enrolled in the School District, he received special education services under the IDEA from the 5th grade to the 8th grade. In April of 2008, following M.A.'s three-year reevaluation under the IDEA, the School District determined that M.A. was no longer eligible for special educational services. M.A's Parents took M.A. to a specialist who diagnosed him with Asperger's Syndrome. The next year, in April of 2009, M.A. was incarcerated for committing a crime that at least one doctor has attributed to his disability. When M.A.

**MEMORANDUM DECISION AND ORDER - 22**

returned to the School District, his Parents requested an evaluation for special education. The School District refused—stating that it was relying on the evaluation conducted by the other school district while M.A. was incarcerated for over a year. When M.A.'s Parents continued to assert their rights under the IDEA by requesting an Independent Educational Evaluation, the School District invoked its right to request a due process hearing so that a neutral hearing officer could determine whether the School District was required to provide an IEE.

The due process hearing involved numerous witnesses and took multiple weeks to complete. M.A.'s Parents chose to protect their rights during the hearing by being represented by legal counsel. Ultimately, the Hearing Officer issued a decision in favor of the Parents. Instead of complying with the Hearing Officer's decision, the School District invoked its right to appeal the decision to this Court. This Court recently decided the case in M.A.'s Parents' favor, affirming the Hearing Officer's decision.

The due process hearing was initiated in March of 2011, while M.A. was in 11th grade. It is now June of 2013. The notion that the School District could initiate what has resulted in three years of administrative proceedings and litigation—proceedings that M.A.'s Parents were forced to contend with if they wished to effectuate their rights under the IDEA—and that M.A.'s Parents are not entitled to attorneys' fees after being successful at every level is inconceivable. As noted above, by enacting the fee shifting provision, Congress sought to *encourage, assist, and make whole* "those [parents] and attorneys who worked to vindicate the rights of handicapped children under the [statute]."

**MEMORANDUM DECISION AND ORDER - 23**

*Counsel v. Dow*, 849 F.2d 731, 739 (2d Cir. 1988). That is precisely what occurred in this case and, assuming M.A.'s Parents satisfy the prevailing party requirements set forth by Ninth Circuit, M.A.'s Parents are entitled to fees under § 1415(i)(3)(B)(i)(I).[8]

### B.  Prevailing Party Analysis

The next issue is whether M.A.'s Parents are prevailing parties under existing Ninth Circuit case law. The leading case in the Ninth Circuit on attorneys' fees under the IDEA appears to be *Weissburg v. Lancaster School District*, 591 F.3d 1255 (9th Cir. 2010). In that case, the issue before the court was whether a hearing officer's conclusion that a school had misclassified a student, but not denied the student a FAPE, entitled the student's parents to attorneys' fees under § 1415(i)(3)(B)(i)(I). Judge Pregerson delivered the panel opinion and set forth the test for determining whether parents are entitled to fees as a prevailing party. The court noted that "[a] prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" 591 F.3d at 1258 (quoting *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007)). The key to the analysis is whether the parties' success "materially alter[ed] the legal relationship between the parties." *Id.* The court stated that, "[a]lthough the denial of a FAPE is a common basis for conferring prevailing party status, attorneys' fees are awarded under many other circumstances." *Id.* at 1259 (citing, *inter*

---

[8] As an alternative argument, M.A.'s Parents suggest that they are entitled to attorneys' fees under § 1415(k). The provision is contained in the subsection governing "placement in an alternative setting" and the Court finds that the provision is not applicable in this case. This conclusion, however, does not alter the Court's ultimate finding that M.A.'s Parents are prevailing parties under § 1415(i)(3)(B)(i)(I).

*alia*, *Hall v. Detroit Pub. Sch.*, 823 F. Supp. 1377 (E.D. Mich. 1993) (holding that parent was a prevailing party when her lawsuit enabled her son to receive a timely hearing)).

Thus, the question is whether M.A.'s Parents' success at the due process hearing materially altered the legal relationship of the parties in a manner which Congress sought to promote in the fee-shifting provision. The Court finds that there was material alteration warranting an award of fees. In obtaining the relief ordered by the hearing officer—that the School District provide M.A. with an IEE at public expense—M.A.'s Parents clearly secured a remedy that fosters the purposes of the IDEA. While the hearing officer did not determine whether M.A. was eligible for special educational services, this primarily was due to the fact that the School District sought the due process hearing before conducting an appropriate evaluation. The hearing officer specifically found that he could not make the eligibility determination without an appropriate evaluation. The hearing officer's decision required the School District to provide an IEE at public expense. That holding clearly altered the legal relationship between the parties.

## 2.      Statute of Limitations

Hearing Officer Price issued his decision in favor of M.A.'s Parents on June 6, 2011.[9] M.A.'s Parents filed their claim for attorneys' fees associated with the administrative decision on July 28, 2011. (Dkt. 6.) The request for attorneys' fees was

---

[9] Hearing Officer Price issued an amended decision on June 15, 2011. Because the Court's decision does not turn on the difference in timing between Hearing Officer Price's original and amended decisions, the Court need not decide which decision triggered the statute of limitations. For the purposes of the statute of limitations analysis, however, the Court will assume the earlier date applies.

**MEMORANDUM DECISION AND ORDER - 25**

filed 52 days after Hearing Officer Price issued his decision. The School District contends that the applicable statute of limitations is either 14 or 42 days and that M.A.'s Parents' request for fees is therefore untimely. M.A.'s Parents argue that the 90-day limitations period for appealing an adverse decision from a due process hearing under the IDEA applies to claims for attorneys' fees and that their request is therefore timely. For the reasons set forth below, the Court disagrees with both parties, but finds that M.A.'s Parents' claim for fees is not barred by the applicable statute of limitations.

It is well settled that, when Congress fails to provide a statute of limitations for a cause of action in a federal statute, the Court is required to adopt the most analogous state time limitation, so long as it is consistent with federal policy to do so. *See Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so."); *see also*, *S.V. v. Sherwood Sch. Dist.*, 254 F.3d 877, 879 (9th Cir. 2001) (recognizing that, prior to the 2004 amendments, the IDEA did not contain a statute of limitations for appeals from due process hearings and the court was therefore required to determine the most analogous state statute of limitations).

The parties disagree as to whether the IDEA contains a statute of limitations governing claims for attorneys' fees under § 1415(i)(3)(B). Thus, the first question the Court must address is whether the 90-day statute of limitations for appeals from due process hearings contained in the IDEA—which was added to the statute in

**MEMORANDUM DECISION AND ORDER - 26**

2004—applies to claims for attorneys' fees under § 1415(i)(3)(B). If the Court finds that the 90-day statute of limitations does not apply to claims for attorneys' fees under the IDEA, the Court must then determine the most closely analogous state statute of limitations for such claims.

### A.  The 90-day limitations period does not apply to claims for attorneys' fees

The IDEA specifies that an aggrieved party may appeal an adverse decision from a due process hearing in federal court. 20 U.S.C. § 1415(i)(2)(A) ("Any party aggrieved by the findings and decision made [by a hearing officer during an administrative due process hearing] . . . shall have the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States."). Prior to 2004, the statute did not specify how long an aggrieved party had to file the appeal and courts were required to borrow the most analogous state statute of limitations. In 2004, Congress amended the IDEA, specifying a limitations period for such appeals. In the amended statute, § 1415(i)(2)(B) provides that "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action . . . in such time as the State law allows." M.A.'s Parents contend that the 90-day limitations period added to the statute in 2004 applies to claims for attorneys' fees under § 1415(i)(3)(B). For the reasons set forth below, the Court disagrees.

The structure and language of the applicable statutory provisions lead the Court to believe that the 90-day limitations period applies only to appeals from due process

**MEMORANDUM DECISION AND ORDER - 27**

hearings and not separate actions for attorneys' fees. Section 1415 is divided into fifteen subsections—(a) through (o). Here, the applicable provision is subsection (i), which is entitled "Administrative procedures" and generally governs the applicable procedures following a due process hearing. *See* 20 U.S.C. § 1415(i). The first paragraph of subsection (i) specifies that due process hearing decisions are final, except that they can be appealed in accordance with the second paragraph of the subsection. *Id*. § 1415(i)(1)(A) and (B). The second paragraph is entitled "Right to bring civil action" and is broken into three sub-parts—(A) through (C). Paragraph (2)(A) specifies that "[a]ny party aggrieved by the findings and decision made [during a due process hearing]" can file an appeal in state or federal court; Paragraph (2)(B) sets forth a 90-day statute of limitations for such appeals; and Paragraph (2)(C) provides what evidence the court will receive on appeal and the standard of review. *Id*. § 1415(i)(2)(A) - (C).

Attorneys' fees are governed by the third paragraph of subsection (i), which is further broken into seven sub-parts—(A) through (G). *Id*. § 1415(i)(3)(A) - (G). Paragraph (3)(A) grants federal district courts jurisdiction to hear actions under § 1415 without regard to the amount in controversy; Paragraph (3)(B) grants the court authority to award attorneys' fees to the "prevailing party" "[i]n any action or proceeding brought under this section," which includes fees for costs incurred during due process hearings; Paragraph (3)(C) tells the court how to calculate the attorneys' fees; and Paragraph (3)(D) through (G) specify exceptions to the fee-shifting provision, exceptions to the exceptions, scenarios under which attorneys' fees should be reduced, and exceptions to the reduction

**MEMORANDUM DECISION AND ORDER - 28**

clause. *See* 20 U.S.C. § 1415(i)(3)(C) - (G).

Notably, the statute of limitations provision appears within—and only within—the part of subsection (i) governing appeals from a due process hearing. Specifically, § 1415(i)(2)(A) refers to an action by a "party *aggrieved* by the findings and decision made [by a hearing officer]." 20 U.S.C. § 1415(i)(2)(A) (emphasis added). The paragraph goes on to set forth a 90-day limitation period for appealing the decision of the hearing officer, *see* § 1415(i)(2)(B), and then sets forth what evidence the district court may receive on appeal and the standard of review to be applied. *Id.* § 1415(i)(2)(C). In contrast, the attorneys' fee provision appears in a separate paragraph and refers to the *prevailing* party in a due process hearing (as opposed to the aggrieved party). *Id.* § 1415(i)(3)(B) (emphasis added). Significantly, the paragraph sets forth several limitations on the recovery of attorneys' fees but does not include a time limitation. *See id.* § 1415(i)(3)(D) and (F).

Given the language and structure of subsection (i), several courts have held, and this Court agrees, that the 90-day statute of limitations contained in § 1415(i)(2)(B) does not apply to claims for attorneys' fees under § 1415(i)(3)(B). *See e.g.*, *Brandon E. v. Dep't of Educ.*, 621 F. Supp. 2d 1013, 1016 (D. Haw. 2008) ("Congress intended the IDEA's limiting statute to apply exclusively to due process appeals to federal court and not to separate fee actions."); *P.M. v. Evans-Brant Central Sch. Dist.*, 2012 US Dist LEXIS 2493 * 9-12 (W.D.N.Y. 2012) ("this Court is unpersuaded that Congress meant to use the term 'aggrieved' to refer to claimants who won at the administrative level [and, as

**MEMORANDUM DECISION AND ORDER - 29**

such] . . . the IDEA itself suggest[s] that the statute of limitations applies only to those parties seeking appeal, not to those seeking attorney fees."). Rather, by including § 1415(i)(3)(B), Congress provided for a separate court action for attorneys' fees independent of the appeal from an adverse decision in a due process hearing under § 1415(i)(2)(A) - (C). *Brandon E.*, 621 F. Supp. 2d at 1016. This proposition is not controversial: even if the School District had *not* filed an appeal from Hearing Officer Price's decision in this case, M.A.'s Parents certainly would have had the right under the statute to file a claim for attorneys' fees irrespective of whether the due process hearing was appealed.

As noted above, the 90-day statute of limitations period was added to the statute in 2004. The paragraph granting prevailing parties the ability to obtain attorneys' fees, however, was untouched by the 2004 amendment. "Had Congress intended this same statute of limitations period to apply to actions to recover attorneys fees after prevailing at the administrative hearing state, it easily could have[,] [b]ut it did not." *P.M. v. Evans-Brant Central Sch. Dist.*, 2012 US Dist LEXIS 2493 * 11 (W.D.N.Y. 2012). Moreover, "[w]here a statute contains a clear and express reference to the applicability of a specific limitations period for one form of action, and no similar express limitations period exists for another form of action, 'it cannot be that this singular and yet distinctly separate limitations period simply applies to both actions.'" *Id.* (quoting *Wilson v. Gov't of D.C.*, 269 F.R.D. 8, 18 (D.D.C. 2010).

**MEMORANDUM DECISION AND ORDER - 30**

Based on the above analysis, the Court concludes that the 90-day statute of limitations applicable to appeals from a due process hearing does not apply to the separate action for attorneys' fees under the statute. Given this conclusion, the next question is what statute of limitations applies. That question will be addressed below.

### B.  Most Analogous State Statute of Limitations

Because the Court has concluded that the IDEA does not specify a limitation period governing M.A.'s Parents' claim for attorneys' fees incurred in connection with the due process hearing, the Court is required to "'determine the most closely analogous state statute of limitations' and apply that statute 'unless it would undermine the policies underlying the IDEA.'" *Ostby v. Oxnard Union High*, 209 F. Supp. 2d 1035, 1041 (C.D. Cal. 2002) (quoting *Livingston Sch. Dist. Nos. 4 & 1 v. Keenan*, 82 F.3d 912, 915 (9th Cir. 1996)). "In order to assess which state statute of limitations is most analogous, the court 'must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle.'" *S.V. v. Sherwood Sch. Dist.*, 254 F.3d 877, 879 (9th Cir. 2001) (quoting *Wilson v. Garcia*, 471 U.S. 261, 268 (1985)).

The School District argues that either a 14-day or a 42-day statute of limitations applies, both of which come from the Idaho Administrative Procedures Act ("IDAPA"). The 14-day period applies to requests for attorneys' fees from agency decisions "when [the] agency has authority to award costs and/or fees." IDAPA § 4.11.01.471.01. The 42-day provision, also contained in IDAPA, applies to appeals from a hearing officer's

**MEMORANDUM DECISION AND ORDER - 31**

decision under the IDEA. *See* IDAPA § 08.02.109.05.g.[10] That provision provides the following:

> The hearing officer's decision shall be binding unless either party appeals the decision by initiating a civil action. The hearing officer's decision shall be implemented not later than fourteen (14) calendar days from the date of issuance unless an appeal is filed by a parent or adult student or the decision specifies a different implementation date. *An appeal to civil court must be filed within forty-two (42) calendar days from the date of issuance of the hearing officer's decision.*

IDAPA § 08.03.02.109.05.g. (emphasis added).

In their briefing, M.A.'s Parents argue that the Court need not reach the "most analogous state law" inquiry because the 90-day limitations period contained in the IDEA applies. For the reasons set forth above, the Court disagrees with M.A.'s Parents on that point. At the hearing on the motion for fees, the Court asked M.A.'s Parents what state statute of limitations would apply if the Court found that the 90-day limitation period did not apply. When pressed on this issue, although Parents did not provide the Court with a specific statutory provision, Parents' counsel indicated that the most analogous state law statute of limitations would be the same in this case as it is for civil rights suits generally. In Idaho, the most analogous statute of limitations for civil rights actions has been held to be the two-year limitation period contained in Idaho Code § 5-219, which is the statute of limitations for personal injury actions. *See Henderson v. State*, 715 P.2d 978, 981 (Idaho

---

[10] In its memorandum in opposition to M.A.'s Parents' motion for fees, the School District only referenced the 14-day provision. It was not until the hearing on the motion that the School District raised the 42-day limitations period.

**MEMORANDUM DECISION AND ORDER - 32**

1986).

The question before the Court has been addressed by a handful of federal district courts within the Ninth Circuit. *See e.g.*, *Brandon E. v. Dep't of Educ.*, 621 F. Supp. 2d 1013 (D. Haw. 2008). Those cases note that there is a circuit split concerning the appropriate state statute of limitations to apply to actions for attorneys' fees under the IDEA. *Id*. at 1017. The circuit split revolves around the way in which a claim for attorneys' fees should be characterized under the IDEA. The issue is conceptual in nature in that claims for attorneys' fees under § 1415(i)(3)(B) can be characterized as an independent cause of action or as an ancillary proceeding to the judicial review of the administrative decision. *See Powers v. Indiana Dep't of Educ.*, 61 F.3d 552, 555 (7th Cir. 1995). "In other words, the attorneys' fees claim could simply be considered an independent claim for money damages or it could be seen as just one part of the underlying dispute over the child's educational placement." *Id*.

"If a claim for attorney's fees is considered an independent claim, it 'is arguably analogous to a tort action seeking money damages, which usually carries a comparatively long statute of limitations.'" *Ostby*, 209 F. Supp. 2d at 1043 (quoting *Powers*, 61 F.3d at 555). "If viewed as part of the administrative review of the underlying education dispute, however, the claim for attorneys' fees is more analogous to statutes dealing with judicial review of state agency decisions[,]" which are generally quite short. *Id*. The difference is extreme: in this case the difference is between a 14 or 42-day limitations period under IDAPA or a 3 year limitations period for actions on liabilities created by statute. *See*

**MEMORANDUM DECISION AND ORDER - 33**

Idaho Code § 5-218.

In *Ostby v. Oxnard Union High*, 209 F. Supp. 2d 1035, 1041 (C.D. Cal. 2002) (a pre-2004 amendment case) and *Brandon E. v. Dep't of Educ.*, 621 F. Supp. 2d 1013 (D. Haw. 2008) (a post-2004 amendment case), the United States District Courts for the Central District of California and the District of Hawaii both canvassed the case law on this issue. They both note that the Sixth and Seventh Circuits have held that actions for attorneys' fees under the IDEA are ancillary to the judicial review of the administrative proceedings and should therefore be governed by statute dealing with judicial review of state agencies. *See King v. Floyd County Bd. of Educ.*, 228 F.3d 622 (6th Cir. 1999) (applying Kentucky's 30 day limitations period governing review of agency decisions to attorneys' fees case under the IDEA); *Powers v. Indiana Dep't of Educ.*, 61 F.3d 552 (7th Cir. 1995) (applying 30 day Indiana state law limitations period governing judicial review of an administrative decision in a special education matter).

In contrast to the Sixth and Seventh Circuit decision, in *Zipperer v. School Board of Seminole County*, 111 F.3d 847, 851 (11th Cir. 1997), the Eleventh Circuit expressly rejected the Seventh Circuit's reasoning in *Powers* and held that, under the IDEA's statutory scheme, an action for attorneys' fees is explicitly distinct from the administrative review process, and therefore should not be considered ancillary to that process. In reaching this decision, the Eleventh Circuit observed that the IDEA does not

give administrative agencies authority to award attorneys' fees. *Id*. at 851.[11] Instead, under the statutory scheme, parties are required to file an original claim for fees in the district court. *Id*. Based on these observations, the Eleventh Circuit concluded that a claim for attorneys' fees is more analogous to an independent action predicated on statutory liability than an appeal of an agency decision and applied Florida's four-year statute of limitations for actions predicated on statutory liability. *Id*. at 850-51.

The district courts in *Ostby* and *Brandon E.* both found the Eleventh Circuit's reasoning more persuasive than the decisions from the Sixth and Seventh Circuits. In *Ostby*, the court rejected the school's argument that a 90-day statute of limitations applicable to special education administrative appeals in California applied and held that the three-year limitations period applicable to actions for liability created by statute was the most analogous state statute of limitations. *Ostby*, 209 F. Supp. 2d at 1044-45. Similarly, in *Brandon E.*, the court rejected a 30-day statute of limitations in favor of Hawaii's six-year catchall statute of limitations. *See Brandon E.*, 621 F. Supp. 2d at 1019.

In *Brandon E.*, the court observed that "the trend in the Ninth Circuit favors viewing actions for attorney's fees as separate and apart from the underlying administrative proceeding under the IDEA." 621 F. Supp. 2d at 1018 (citing *P.N. v. Seattle Sch. Dist., No. 1*, 474 F.3d 1165 (9th Cir. 2007)). The Court finds no reason to buck that trend in this case. The Court finds the Eleventh Circuit's decision in *Zipperer*

---

[11] Here, because the IDEA delegates authority to award attorneys' fees to the district court and not to the state agency, the Idaho State Board of Education did not have authority to award fees under IDAPA § 4.11.01.741.

**MEMORANDUM DECISION AND ORDER - 35**

and the district courts' decisions in *Ostby* and *Brandon E.* highly persuasive: they are well reasoned and supported by the structure and language of the statute. Like the decisions in those cases, here the Court concludes that Congress intended the attorneys' fee provision to operate independent of the underlying administrative proceedings under the IDEA and the appeal procedure from those proceedings set forth in § 1415(i)(2)(A). Based on that conclusion, the Court agrees with the Eleventh Circuit that a claim for attorneys' fees under § 1415(i)(3)(B) is most analogous to an independent action predicated on statutory liability. In Idaho, actions on liability created by statute are subject to a three-year statute of limitations. *See* Idaho Code § 5-218. Since Parents' claim for attorneys' fees was filed less than three years after Hearing Officer Price issued his decision in this case, their claim for attorneys' fees under § 1415(i)(3)(B) is not time barred.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED that**:

1.     Defendants' Motion to Award Attorney Fees and Costs, (Dkt. 64), is GRANTED in part. In accordance with the above memorandum, the Court has determined that Defendants are entitled to attorneys' fees as prevailing parties under 20 U.S.C. § 1415(i)(3)(B)(i)(I). The Court has not determined, however, the amount of fees to be awarded.

**MEMORANDUM DECISION AND ORDER - 36**

2.      Plaintiff shall file its response brief on the reasonableness of Defendants'

requested fees on or before July 12, 2013. Defendants' reply shall be filed on or before

July 26, 2013.



DATED: June 25, 2013

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 37**