UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MERIDIAN JOINT SCHOOL DISTRICT, NO. 2,<br><br>               Plaintiff,<br><br>v.<br><br>D.A. and J.A., on behalf of themselves and as legal guardians and parents of M.A., a minor individual with a disability<br><br>               Defendants. | Case No. 1:11-cv-00320-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is the question of appropriate relief in this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. Plaintiff, the Meridian Joint School District No. 2 ("MSD"), initiated this administrative appeal to challenge Hearing Officer Guy Price's determination that M.A., a child diagnosed with high-functioning autism and the student at the center of the dispute in this case, was entitled to an Independent Educational Evaluation ("IEE") at public expense. The Court affirmed HO Price's decision and ruled in favor of Defendants D.A. and J.A., M.A.'s Parents. (Dkt. 63.)

When doing so, the Court requested additional briefing on appropriate relief by late April 2013. A decision on this issue was prolonged by Parents' motion for interim

attorney fees and costs for the underlying due process hearing, (Dkt. 64), and MSD's request that the Court bifurcate the issue of entitlement to interim fees from the issue of the reasonableness of such fees (Dkt. 70). The Court granted the motion to bifurcate, (Dkt. 71), determined M.A.'s Parents were entitled to interim attorney fees, (Dkt. 92), and ultimately granted in part and denied in part Parents' motion for interim fees (Dkt. 101.)

As alleged appropriate relief, M.A.'s Parents request reimbursement for the IEE and various amendments they obtained at their own expense after MSD denied their request. The facts and legal arguments are adequately presented in the briefs and the record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record pursuant to District of Idaho Local Civil Rule 7.1(d). For the reasons set forth below, the Court finds M.A.'s Parents are entitled to $6,854.00 for the IEE.

## BACKGROUND

The underlying facts and procedural history of this case are well known to the parties and set forth in in more detail in the Court's rulings on Parents' motion for interim attorneys' fees, (Dkt. 92, 101), and the Court's Memorandum Decision and Order entered March 20, 2013 (Dkt. 63). They need not be repeated in full.

Relevant here, on June 6, 2011, HO Price found M.A. was entitled to an IEE at public expense. In his Memorandum Decision and Order, HO Price declined to decide whether M.A. was eligible for special education, concluding that such a ruling would be

**MEMORANDUM DECISION AND ORDER - 2**

premature without an IEE. Although HO Price initially retained jurisdiction, he issued and Addendum and Errata to Memorandum Decision in July 2011, in which he relinquished jurisdiction and again noted that issues related to special education eligibility could not be decided until "the IEE is completed and acted upon by the District." (Dkt. 1-3 at 2.) MSD timely appealed shortly thereafter.[1] After considering the record before HO Price and additional evidence presented by the parties, the Court affirmed the Hearing Officer and ordered the parties to brief the issue of appropriate relief by late April 2013.[2] (Dkt. 63.)

While the appeal of HO Price's decision proceeded in this Court, M.A.'s Parents retained Dr. Barbara Webb, an expert in autism with twenty years of experience as a school psychologist, to review M.A.'s educational records and prepare an IEE. On August 29, 2011, Dr. Webb provided Parents an initial IEE based on input from other professionals and an extensive review of tests, previous school district evaluations, meeting transcripts, and other records. (Dkt. 22-16.) Dr. Webb amended the initial IEE on September 13, 2011, to include additional opinions regarding M.A.'s eligibility for special education and a review of testimony by M.A.'s teachers during the spring 2011 due process hearing before HO Price. (Dkt. 22-21.) Dr. Webb also prepared two

---

[1] In their pleadings, both parties urge the Court to decide issues and grant relief related to M.A.'s alleged eligibility for special education. However, the Court will not do so here. HO Price properly declined to decide the eligibility question without the benefit of the IEE, and, accordingly, that question is not before the Court in this appeal.

[2] MSD has appealed—without permission from the Court—two interlocutory orders in this case to the United States Court of Appeals for the Ninth Circuit. (*See* Dkt. 105 (appealing the Orders at Dkt. 92 and 101); 67 (appealing the Order at Dkt. 63).) As of this date, the Ninth Circuit has not ordered a stay of these proceedings pending appeal.

**MEMORANDUM DECISION AND ORDER - 3**

supplemental assessments in January 2012 and presented her findings at meetings of MSD's special education eligibility team in late 2011 and early 2012. (Dkt. 65-3 at 6-7.)

MSD reviewed the IEE in connection with its determination that M.A. is not eligible for special education, a finding currently before the Court in a separate proceeding. *See D.A. ex. rel. M.A. v. Meridian Joint Sch. Dist. No. 2*, No. 1:12-cv-00426-CWD (D. Idaho). The parties also engaged in separate litigation over M.A. and his Parents' claims against MSD and the Independent School District of Boise City under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. *See D.A. ex. rel. M.A. v. Meridian Joint Sch. Dist. No. 2*, No. 1:11-cv-00119-CWD (D. Idaho). Trial in that case resulted in a jury verdict favorable to the school districts. Since 2011, this IEE proceeding, along with the Section 504 proceedings, all were litigated first at the administrative level and then in this Court. Each case, including the ADA/Section 504 jury trial, involved somewhat overlapping evidence. That is significant because, as discussed below, M.A.'s Parents seek reimbursement here for professional services related to the Section 504 litigation.

Claiming a total cost of $18,509.90, M.A.'s Parents now seek reimbursement from MSD for the cost of Dr. Webb's IEE. According to M.A.'s Parents, the cost of the IEE includes additional assessments of M.A., report preparation, and presentations to MSD during various meetings after the IEE was submitted. In other words, M.A.'s Parents argue they should be reimbursed for not only the cost of the evaluation and its amendments, but also the cost of presenting the IEE to MSD as the school district assessed M.A.'s eligibility for special education. M.A.'s Parents further request that the

**MEMORANDUM DECISION AND ORDER - 4**

Court order an assistive technology evaluation pursuant to 34 C.F.R. § 300.105. MSD objects, arguing M.A.'s Parents are entitled to only $1,500 for the cost of the IEE.

## DISCUSSION

**1.     Legal Standard**

After the Court has reviewed the administrative record, heard additional evidence, and entered a decision on the preponderance of the evidence, the IDEA authorizes "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The United States Supreme Court interpreted identical language in the IDEA's predecessor statute as conferring "broad discretion on the court." *Sch. Comm. of Burlington v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369 (1985). Finding the statutory term "appropriate" must be understood in light of the Act's purposes, the Supreme Court went on to hold that "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." *Id*.

Congress included the right to an IEE at public expense as one of the IDEA's essential procedural safeguards.

> School districts have a natural advantage in information and expertise, but Congress addressed this when it obliged schools to safeguard the procedural rights of parents and to share information with them.... [Parents] have the right to an independent educational evaluation of the[ir] child. The regulations clarify this entitlement by providing that a parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition.

**MEMORANDUM DECISION AND ORDER - 5**

*Schaffer ex. rel. Schaffer v. Weast*, 546 U.S. 49, 60-61 (2005) (citations and quotations omitted).

The right to an IEE entitles parents to a publicly funded independent, expert assessment of their child. 34 C.F.R. § 300.502(a)(3)(i). The IEE, like MSD's own evaluation, must assess "all areas related to the suspected disability." *Id.* § 300.304(b)(4); *see also* IDAPA 08.02.03.109.05.j ("[T]he criteria under which the evaluation is obtained, including the location of the evaluation and the qualifications of the examiner, shall be the same as the criteria the education agency uses when it initiates an evaluation, to the extent those criteria are consistent with the parent or adult student's right to an IEE."). But this does not entitle parents to expenses unrelated to the expert's independent evaluation of the student. Rather, the Court will order reimbursement only for costs clearly linked to the IEE.

2. **Cost of the IEE**

With respect to this case, the Court agrees with HO Price that the IEE of M.A. "should be specifically designed to understand the student's disabilities and whether they affect his academic performance and indicate a need for specialized instruction…." (Dkt. 1-2 at 18.) The August 2011 IEE M.A.'s Parents obtained from Dr. Webb addresses these criteria through analysis of educational records, observations, and testing by Dr. Webb and other professionals. Dr. Webb supplemented the IEE with new analyses in September 2011 and twice in January 2012. Dr. Webb also participated in two meetings, one in November 2011 and one in January 2012, where she presented her findings to the MSD team tasked with determining whether M.A. was eligible for special education. M.A.'s

**MEMORANDUM DECISION AND ORDER - 6**

Parents seek reimbursement for all of these services, whereas MSD insists only the cost of the initial IEE prepared by Dr. Webb is reimbursable.

In addition to the cost of Dr. Webb's evaluations, M.A.'s Parents claim they should be reimbursed "for IEE-related activities, assessments, observations, and reporting to the district" by Michael Spero, Rebecca Thompson, Dr. Craig Beaver, Chris Curry, and Dr. Tyler Whitney. (*Id.* at 6-7.) MSD argues that the costs for these professional services constitute non-reimbursable expert consultation fees. In support, MSD claims the United States Supreme Court has held that "school districts are not responsible for reimbursing prevailing parents for services rendered by experts or consultants." (Dkt. 77 at 11(citing *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291 (2006).) But this overstates the holding in *Arlington* and misconstrues the scope of the Court's discretion under the controlling statutory provision.

*Arlington* addresses a narrow, clearly defined issue: Whether the IDEA's fee-shifting provision "authorizes prevailing parents to recover fees for services rendered by experts in IDEA actions." 548 U.S. at 293-94. There, a student's parents sought $29,350 for services by a non-lawyer educational consultant as litigation costs under 20 U.S.C. § 1415(i)(3)(B).[3] The Supreme Court held that neither the goals of the IDEA, the Court's interpretation of identical language in other statutes, nor the text of the fee-shifting provision itself evidenced unambiguous congressional intent to make expert fees part of the "costs" available to a prevailing parent under 20 U.S.C. § 1415(i)(3)(B). *Id.* at 302-

---

[3] Section 1415(i)(3)(B) provides that "the court, in its discretion may award reasonable attorneys' fees as part of the costs – (I) to a prevailing party who is the parent of a child with disability…."

**MEMORANDUM DECISION AND ORDER - 7**

04. Accordingly, the consultant's services were not compensable under the fee-shifting provision. However, *Arlington* says nothing about the permissible scope of the relief that may be granted pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii)—the governing IDEA provision here.

As stated above, 20 U.S.C. § 1415(i)(2)(C)(iii) authorizes "such relief as the court determines is appropriate." Unlike the fee-shifting provision at issue in *Arlington*, the text of § 1415(i)(2)(C)(iii) evinces clear congressional intent that the district courts should have broad discretion to craft appropriate remedies for IDEA violations. Indeed, that is precisely what the United States Supreme Court held in *Burlington*. 471 U.S. at 369. While the Court may not award expert fees as part of costs claimed under the IDEA's fee-shifting provision, here, the Court may include such fees as part of the relief if "appropriate."

Appropriate relief includes only expenses that enabled M.A.'s Parents to obtain the IEE considered by MSD's eligibility team. Although the Court recognizes the IEE of M.A. is a compilation of work by several professionals, the Court also notes that many of these same professionals have provided services to M.A.'s Parents in other proceedings involving MSD. Accordingly, the Court will not assume an expense is reimbursable simply because it appears in an invoice for services rendered to M.A.'s Parents. Rather, the Court will look for a clear link between the services rendered and the IEE. Absent such a link, the expense will be disallowed. With these standards in mind, the Court now reviews Parents' requested relief.

**MEMORANDUM DECISION AND ORDER - 8**

### a.     *Dr. Barbara Webb*

M.A.'s Parent claim $11,569.40 for Dr. Webb's services, including her review of M.A.'s educational record, IEE preparation, supplemental assessments, and presentations to MSD's eligibility team. (Dkt. 65 at 7.) MSD contends that only $1,500—the amount Dr. Webb billed for preparing the initial IEE—is reimbursable. It is noteworthy that HO Price determined M.A.'s Parents were entitled to an IEE on June 6, 2011 and that, on June 14, 2011, Parents' counsel sent MSD's counsel a letter stating Parents' intention to have Dr. Webb prepare an IEE. (Dkt. 65-2.) Yet M.A.'s Parents claim reimbursement for $3,963 in services Dr. Webb rendered from February to April, 2011, months before Parents were found to be entitled to an IEE. (Dkt. 65-3 at 1-3.) These services include record review, interviews, and testimony, some of which is attributed to the "504 Case" and some to the "Special Education Case". (*Id.*) But Dr. Webb's IEE indicates her assessments were conducted in August 2011 and her invoices otherwise contain specific charges from August 2011 through February 2012 that are linked to the IEE. Therefore, it is unclear how Dr. Webb's spring 2011 services relate to the IEE, and the Court finds these charges are outside the appropriate scope of relief.

M.A.'s Parents also claim $2,056.40 for Dr. Webb's protocol review, testimony, hotel, and airfare in connection with "Meridian S.D. 504." (Dkt. 65-3 at 5.) This cryptic notation likely refers to services rendered in proceedings under Section 504 of the Rehabilitation Act. Yet Parents do not explain how expenses from the Section 504 proceedings relate to the cost of the IEE required under the IDEA. Accordingly, the Court finds these costs do not constitute appropriate relief.

**MEMORANDUM DECISION AND ORDER - 9**

However, the Court finds the $4,650 billed by Dr. Webb for the IEE and its amendments qualifies as appropriate relief. (*See* Dkt. 65-3 at 4-7.) These costs include record review, preparation of the initial IEE, preparation of the Vineland assessment supplement, and preparation of the Social Responsiveness Scale supplement—all performed between August 2011 and January 2012. MSD argues, without supporting authority, that "[f]ederal law does not contemplate such a 'rolling' evaluation." (Dkt. 77 at 12). Yet MSD also concedes the IEE and its amendments were all considered in connection with the school district's February 2012 determination that M.A. is not eligible for special education. (*Id.* at 13.) MSD cannot have it both ways, especially because the school district does not argue the IEE is deficient in any way. If the eligibility team considered the IEE and its amendments, then M.A.'s Parents are entitled to reimbursement for the full cost of Dr. Webb's evaluation.

In addition, the Court regards the $900 Dr. Webb billed for participating in "IEP Teleconference[s]" on November 10, 2011 and February 2, 2012, as costs appropriately incurred to obtain the benefit of the IEE. (Dkt. 65-3 at 6-7.) There is sufficient information in the record for the Court to find that these teleconferences are for eligibility team meeting where Dr. Webb presented her findings. And the conclusion that such costs are reimbursable is not without precedent. *See M.M. v. Lafayette Sch. Dist.*, Nos. CV 09-4624, 10-04223, 2012 WL 398773, *11 (N.D. Cal. Feb. 7, 2012) (including expert's IEE presentation as part of the "full cost" of an IEE). The purpose of an IEE, after all, is to counter the school district's expert opinion. MSD contends this purpose was met once Dr. Webb delivered the initial IEE to M.A.'s Parents in August 2011. But Parents' right to an

**MEMORANDUM DECISION AND ORDER - 10**

IEE, let alone their right to participate in decisions on the educational placement of M.A., *see* 34 C.F.R. § 300.501(c), would mean little if they were left to challenge the District's experts with a partial assessment or "without an expert with the firepower to match the opposition." *Schaffer*, 549 U.S. at 60. Therefore, Parents are entitled to reimbursement for time Dr. Webb spent explaining her IEE to the eligibility team. In total, M.A.'s Parents are entitled to $5,550 for Dr. Webb's services in connection with the IEE.

      b.    *Rebecca Thompson and Michael Spero*

Dr. Webb's IEE incorporates independent assessments conducted in August 2011 by Michael Spero, an occupational therapist, and Rebecca Thompson, a speech-language pathologist. (IEE at 1, Dkt. 22-16.) The IEE states Thompson assessed M.A. between August 9 and 18, 2011, and Spero's assessments took place between August 18 and 25, 2011. (*Id.*) M.A.'s Parents note that third-parties, such as Medicaid, paid for some of Thompson's and Spero's services and that Parents do not seek reimbursement for those costs. (Dkt. 65 at 5.) However, M.A.'s Parents claim reimbursement for $880 in billings by Thompson and $630 by Spero. MSD attacks these charges as non-reimbursable expert consultation fees.

Both Thompson's and Spero's billing records are imprecise. All of their invoices are dated months after the assessments noted in the IEE. Thompson's billing records include a $560 invoice for "legal representation," yet she is not licensed to practice law and the briefs and billing records do not otherwise disclose the nature of her services. (Dkt. 65-5 at 1.) Thompson's billing also includes a $320 invoice for "Administration Time/Paperwork" and "Mileage." (*Id.* at 3.) And, unlike Dr. Webb's invoices, which

**MEMORANDUM DECISION AND ORDER - 11**

describe the nature of the services rendered, Thompson's invoices use general "activity codes" such as "Administrative." (Dkt. 65-5 at 2, 4.) M.A.'s Parents contend Thompson's invoices relate to preparing unspecified reports, conducting unspecified observations, and attending an unspecified "school team meeting." (Dkt. 65 at 6.) These contentions invite the assumption that the paperwork and administrative efforts referenced in these invoices were incorporated into the IEE and considered by the eligibility team. But, given that Thompson is involved in other the proceedings between the parties, her invoices and Parents' vague statements provide no basis for such a conclusion.

Spero's billing records are somewhat more descriptive but do not disclose the dates on which his services were rendered. (*See* Dkt. 65-6.) One invoice for therapy and reporting is dated March 2012, the month after MSD utilized the IEE and other evidence to make its eligibility determination. (*Id.* at 2.) Spero's other invoice, dated December 2011, contains charges for Section 504 matters and an "Opinion Letter" with no mention of the subject. (*Id.* at 1.) These deficiencies likewise invite the Court to assume a connection to the IEE where M.A.'s Parents make little effort to demonstrate one. By providing only cryptic invoices and the bare assertion that "all of the amounts claimed were related to the IEE," (Dkt. 84 at 13), M.A.'s Parents have not established the amounts claimed for Thompson's and Spero's services qualify as appropriate relief.

    c.    *Chris Curry, Dr. Craig Beaver, and Dr. Tyler Whitney*

M.A.'s Parents also seek reimbursement for services rendered by Chris Curry, Dr. Craig Beaver, and Dr. Tyler Whitney. The IEE references reports prepared by these professionals, but all of this information predates HO Price's finding that M.A.'s Parents

**MEMORANDUM DECISION AND ORDER - 12**

were entitled to an IEE at public expense. (Dkt. 22-16 at 1 (Curry's report dated March 14, 2011; Beaver's report dated May 19, 2010; Whitney's report dated April 29, 2009).) Close inspection of the invoices confirms that many of these expenses relate to Parents' efforts to establish their entitlement to the IEE—as opposed to the cost of preparing or presenting the IEE itself. Indeed, Dr. Beaver's and Ms. Curry's invoices include charges for April 2011testimony in the due process hearing before HO Price. (Dkt. 65-4, Dkt. 65-7.) More problematic, Curry's invoice also includes costs for observations and a report on "504 accommodations," yet M.A.'s Parents again do not explain how assessments for Rehabilitation Act purposes relate to the IEE they are entitled to under the IDEA. (Dkt. 65-4 at 1.)

  The entirety of Dr. Whitney's billing is for services in late 2010, before M.A.'s Parents even requested an IEE from MSD. (Dkt. 65-1 at 2-3.) Further, Dr. Whitney's charges relate to either unspecified school meetings or travel time to and from unspecified locations. Simply put, it is largely unclear clear how these three professionals' services relate to the cost of the IEE prepared by Dr. Webb and considered by MSD. The Court is not inclined to guess.

  The only exceptions are expenses for the special education eligibility portion of Curry's Educational Needs Assessment. In particular, Curry's invoice discloses $1,304 in expenses for travel, a six-hour observation session "for eligibility," and a report "on eligibility" dated March 14, 2011. Dr. Webb specifically references Curry's March 14 report in the IEE. (Dkt. 65-1 at 1, 9-14.) This is a clear link between the invoices and the IEE, the type of link absent from many of the other invoices attached to Parents' request

**MEMORANDUM DECISION AND ORDER - 13**

for relief. Thus, there is sufficient basis for the Court to conclude this $1,304 in expenses may appropriately be considered part of the IEE cost.

### 3. Assistive Technology Evaluation

Near the end of their initial brief on appropriate relief, M.A.'s Parents make a terse request for a Court-ordered independent assistive technology evaluation. (Dkt. 65 at 8.) The only support for the request is an allusion to 34 C.F.R. § 300.105, which directs school districts to make assistive technology services "available to a child with disability *if required as part of the child's* – (1) *Special education* under § 300.36; (2) *Related services* under § 300.34; or (3) *Supplementary aids and services* under §§ 300.38 and 300.114(a)(2)(ii)." (emphasis added). MSD contends that M.A.'s need for assistive technology is not properly before the Court and is otherwise beyond the scope of an appropriate IEE. The Court agrees.

By stating "if required as part of the child's… Special education," the regulations clearly contemplate assistive technology services only for students *eligible* for special education. 34 C.F.R. § 300.105(a). This appeal, however, presented the narrow question of whether HO Price correctly found that M.A.'s Parents were entitled to an IEE at public expense. The legally and factually distinct question of whether M.A. is eligible for special education is now pending before the Court in a separate case. *See D.A. ex. rel. M.A. v. Meridian Joint Sch. Dist. No. 2*, No. 1:12-cv-00426-CWD (D. Idaho). Therefore, the assistive technology evaluation is not appropriate relief in this action.

**MEMORANDUM DECISION AND ORDER - 14**

## CONCLUSION

The Court, in its discretion, has determined that M.A.'s Parents are entitled to $6,854.00 in reimbursement for the expenses of the IEE. The additional expenses claimed by M.A.'s Parents are not clearly linked to the IEE and are thus outside the scope of appropriate relief. Likewise, an assistive technology evaluation, as it relates to the M.A.'s alleged eligibility for special education, is not before the Court in this proceeding.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that judgment in the amount of $6,854.00 shall be entered in this matter, that Plaintiff reimburse Defendants the amount of $6,854.00 for the reasonable expenses of the IEE, and that final judgment be entered in this case accordingly.

Dated: **November 25, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**